UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

| | | |
|---|---|---|
| **DAVE E. TROTTER** | ) | **CASE NO.: 4:18-CV-00174-JHM** |
| **18364 Dawson Springs Road** | | **Magistrate Judge, H. Brent** |
| **Dawson Springs, Kentucky 42408** | ) | **Brennenstuhl** |
| | | |
| **and** | ) | |
| | | |
| **BRENDI JENNIFER TROTTER** | ) | |
| **18364 Dawson Springs Road** | | |
| **Dawson Springs, Kentucky 42408** | ) | |
| | | |
| **PLAINTIFFS** | ) | |
| | | |
| **vs.** | ) | |
| | | |
| **FRONTLINE EQUIPMENT, LLC** | ) | |
| **9477 Front Mountain Road** | | |
| **Allensville, Pennsylvania 17002** | ) | |
| | | |
| **SERVE:** **Via Kentucky Secretary of State:** | ) | |
| **Kentucky Secretary of State** | | |
| **State Capitol** | ) | |
| **700 Capital Avenue, Suite 152** | | |
| **Frankfort, KY 40601** | ) | |
| | | |
| **and** | ) | |
| | | |
| **PAUL ARBOGAST** | ) | |
| **9267 Front Mountain Road** | | |
| **Allensville, Pennsylvania 17002** | ) | |
| | | |
| **SERVE:** **Via Kentucky Secretary of State:** | ) | |
| **Kentucky Secretary of State** | | |
| **State Capitol** | ) | |
| **700 Capital Avenue, Suite 152** | | |
| **Frankfort, KY 40601** | ) | |
| | | |
| **and** | ) | |
| | | |
| **D. ZIMMERMAN ELECTRIC, INC.** | ) | |
| **55 Zimmerman Lane** | | |
| **Beaver Springs, PA 17812** | ) | |



EXHIBIT
A

d/b/a                                                )

ZIMMERMAN ELECTRIC, INC.                             )
4913 Peach Street
Erie, PA 16509                                       )

SERVE:      Via Kentucky Secretary of State:        )
            Kentucky Secretary of State
            State Capitol                            )
            700 Capital Avenue, Suite 152
            Frankfort, KY 40601                      )

and                                                  )

RECKART EQUIPMENT COMPANY, INC.                      )
314 Chase Lane
Elkins, WV 26241                                     )

d/b/a                                                )

RECKART EQUIPMENT BROKERS, INC.                      )
314 Chase Lane
Elkins, WV 26241                                     )

SERVE:      Via Kentucky Secretary of State:        )
            Kentucky Secretary of State
            State Capitol                            )
            700 Capital Avenue, Suite 152
            Frankfort, KY 40601                      )

and                                                  )

PEIGHT'S WELDING SHOP                                )
4656 Front Mountain Road
Belleville, PA 17004                                 )

SERVE:      Via Kentucky Secretary of State:        )
            Kentucky Secretary of State
            State Capitol                            )
            700 Capital Avenue, Suite 152
            Frankfort, KY 40601                      )

            DEFENDANTS

2

## AMENDED COMPLAINT AND JURY DEMAND

Come now Plaintiffs, Dave E. Trotter and Brendi Jennifer Trotter, by and through counsel, and for their Amended Complaint state as follows:

### JURISDICTIONAL ALLEGATIONS

1.      Plaintiffs, Dave E. Trotter and Brendi Jennifer Trotter [hereinafter referred to as "Plaintiff" or "Plaintiffs"], are citizens of the State of Kentucky and residents of Hopkins County, Kentucky, residing at 18364 Dawson Springs Road, Dawson Springs, KY 42408. At all times relevant herein they have been and are legally husband and wife.

2.      Defendant, Frontline Equipment, LLC [hereinafter referred to "Defendant"], is a Pennsylvania Limited Liability Company with its statutory home office located at 9477 Front Mountain Road, Allensville, Pennsylvania 17002. Defendant Frontline Equipment, LLC has availed itself of the laws provided by the Commonwealth of Kentucky and has manufactured, assembled, installed, modified, advertised, marketed, distributed, sold or otherwise caused to be located in the Commonwealth of Kentucky, a defective product, which caused tortious injury in the Commonwealth of Kentucky. Defendant Frontline Equipment, LLC is not licensed to do business in the Commonwealth of Kentucky.  Defendant Frontline Equipment, LLC has failed to appoint an Agent for Service of Process in Kentucky, therefore pursuant to KRS 454.170, Alison L. Grimes, the Kentucky Secretary of State is its Agent for Service of Process. The Secretary of State is requested to notify Frontline Equipment, LLC of this action by sending a copy of this Complaint to the address on the caption of this Complaint.

3.      Defendant, Paul Arbogast, is an installer, assembler, independent contractor, agent and/or employee of Defendant Frontline Equipment, LLC and his principal address is at 9267

3

Front Mountain Road, Allensville, Pennsylvania 17002. Defendant, Paul Arbogast has availed himself of the laws provided by the Commonwealth of Kentucky and has manufactured, assembled, installed, advertised, marketed, distributed, sold, approved of, certified the safety of or otherwise caused to be located in the Commonwealth of Kentucky, a defective product which caused tortious injury in the Commonwealth of Kentucky. Pursuant to KRS 454.170, Paul Arbogast's Agent for Service of Process is Alison L. Grimes, the Kentucky Secretary of State. The Secretary of State is requested to notify Paul Arbogast of this action by sending a copy of this Complaint to the address on the caption of this Complaint.

4.      Defendant, D. Zimmerman Electric, Inc., is a Pennsylvania Corporation with its statutory home office located at 55 Zimmerman Lane, Beaver Springs, Pennsylvania 17812, d/b/a Zimmerman Electric Inc., 4913 Peach Street, Erie, PA 16509. Upon information and belief, Defendant, D. Zimmerman Electric, Inc. has availed itself of the laws provided by the Commonwealth of Kentucky and has installed safety equipment, assembled, installed, approved of, certified the safety of or otherwise caused to be located in the Commonwealth of Kentucky, a defective product which caused tortious injury in the Commonwealth of Kentucky. Pursuant to KRS 454.170, D. Zimmerman Electric, Inc's Agent for Service of Process is Alison L. Grimes, the Kentucky Secretary of State.  The Secretary of State is requested to notify D. Zimmerman Electric, Inc. of this action by sending a copy of this Complaint to the address on the caption of this Complaint.

5.      Defendant, Reckart Equipment Company, Inc., is a West Virginia Corporation with its statutory home office located at 314 Chase Lane, Elkins, WV 26241, d/b/a Reckart Equipment Brokers, Inc., 314 Chase Lane, Elkins, WV 26241. Defendant, Reckart Equipment Company, Inc. has availed itself of the laws provided by the Commonwealth of Kentucky and has manufactured,

4

assembled, installed, advertised, marketed, distributed, sold, approved of, certified the safety of or

otherwise caused to be located in the Commonwealth of Kentucky, a defective product which

caused tortious injury in the Commonwealth of Kentucky. Pursuant to KRS 454.170, Reckart

Equipment Company, Inc.'s Agent for Service of Process is Alison L. Grimes, the Kentucky

Secretary of State.  The Secretary of State is requested to notify Reckart equipment Company, Inc.

d/b/a Reckart Equipment Brokers, Inc.'s agent of process of this action by sending a copy of this

Complaint to the address on the caption of this Complaint.

6.      Defendant, Peight's Welding Shop is a Pennsylvania company with its home office

located at 4656 Front Mountain Road, Belleville, Pennsylvania 17004. Defendant, Peight's

Welding Shop has availed itself of the laws provided by the Commonwealth of Kentucky and has

manufactured, assembled, installed, advertised, marketed, distributed, sold, approved of, certified

the safety of or otherwise caused to be located in the Commonwealth of Kentucky, a defective

product which caused tortious injury in the Commonwealth of Kentucky. Pursuant to KRS

454.170, Peight's Welding Shop's Agent for Service of Process is Alison L. Grimes, the Kentucky

Secretary of State.  The Secretary of State is requested to notify Peight's welding Shop of this

action by sending a copy of this Complaint to the address on the caption of this Complaint.

7.      Jurisdiction is proper in that  diversity exists between the Plaintiffs and Defendants

and the actions described in this Complaint occurred in Hopkins County, Kentucky, and the

amount in controversy for each claim exceeds the jurisdictional minimum of this Court,

specifically $75,000.00, exclusive of costs and interest.

8.      Venue is proper in that the events complained of took place in Dawson Springs,

Hopkins County, Kentucky.

## FACTUAL ALLEGATIONS

9.      Plaintiffs incorporate by reference the allegations contained in Paragraphs 1
through 8 of this Complaint as if fully rewritten herein.

10.      On/or about October 18, 2017, Plaintiff, Dave E. Trotter, a Rip Saw Operator, was
at the operator's station, Gang Rip Saw, cutting wooden boards that were traveling on the
Frontline Transfer 21" Roll Case for his Employer, Larix Inc. located at 260 Charleston Road,
Dawson Springs, Kentucky 42408, Hopkins County Kentucky [hereinafter referred to as "Larix,
Inc."].

11.      On/or about October 18, 2017, wooden boards got stuck on the screw rolls of the
Frontline Roll Case 28" AOL Pan Dump Transfer [hereinafter referred to as "Frontline Roll Case
roller line conveyor"].

12.      Plaintiff left the operator's station to straighten and/or remove the boards to allow
them to be processed correctly.

13.      Plaintiff reached over to a spiral roller (screw roller) to remove wood out of a roller
line of the Frontline Roll Case roller line conveyor as it was running, and his glove got caught and
pulled his right hand into converging rollers.

14.      Plaintiff's right hand was pinned between the roller and metal frame of the
conveyor.  The conveyor was neither locked out nor guarded.

15.      There was not an emergency stop button within Plaintiff's reach, and the screw
rolls temporarily continued running with his gloved hand in between the rolls.

16.      After Plaintiff's yelling for help the screws rolls were stopped.  Neither Plaintiff
nor his co-workers were able to loosen the screw rolls and were unable to remove his hand.

6

Finally, co-workers used cutting equipment to remove a portion of the machinery enabling Plaintiff to remove his hand.

17.     Plaintiff was transported from the worksite in Dawson Springs, Kentucky by car to Baptist Hospital in Madisonville, Kentucky and, due to the severity of his injuries, was transferred to Jewish Hospital at 200 Abraham Flexner Way in Louisville, Kentucky 40202.

18.     Surgery was performed by members of Kleinert Kutz and Associates. Plaintiff Dave E. Trotter sustained serious and disabling hand injuries as a result of the incident. Plaintiff sustained multiple injuries, including but not limited to, displaced fracture of the shaft of his third metacarpal bone on his right hand, displaced fracture of the proximal phalanx of his right little finger, displaced fracture of the proximal phalanx of his right ring finger,  displaced fracture of his proximal phalanx of his right middle finger, displace fracture of his proximal phalanx of his right index finger, displace fracture of the phalanx of his right ring finger, complete traumatic transphalangeal amputation of his right little finger, complete traumatic transphalangeal amputation of his right thumb and a displaced fracture of his proximal phalanx of his right middle finger.   Plaintiff continues to suffer from disability and is continuing medical treatment.

19. To date, Plaintiff has incurred medical and related bills in excess of one hundred and thirty-one thousand ($131,000.00) dollars and is continuing to incur substantial medical and related bills, as well as suffering from mental and physical pain and suffering loss of income, disability and loss of earning potential in the future.

## COUNT I
## NEGLIGENCE OF DEFENDANTS, FRONTLINE EQUIPMENT, LLC AND PAUL ARBOGAST

20.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 19 of this Complaint as if fully rewritten herein.

21.     Defendant Frontline equipment, LLC, by and through its' agents, employees and/or contractors directly participated in the design, manufacture, assembling, installing, marketing and/or selling or placing into the stream of commerce the Frontline Roll Case 28" conveyor system within the boundaries of the Commonwealth of Kentucky.

22.     Upon belief and information, Defendant Paul Arbogast, by and through his actions, directly participated in the design, manufacture, assembling, installing, marketing and/or selling or placing into the stream of commerce the Frontline Roll Case 28" conveyor system within the boundaries of the Commonwealth of Kentucky.

23.     Defendants knew or should have known that the Frontline Roll Case 28" conveyor system would reach users, consumers and sawmill employees in the Commonwealth of Kentucky and knew or should have known that the Frontline Roll Case 28" conveyor system was destined for use in situations where the wood and/or debris might/would get stuck between the rolls as the wood and/or debris traveled on the conveyor and that sawmill employees would rely on the ability of the conveyor to protect them from getting injured.  Defendants therefore had a duty to manufacture, assemble, and/or install the Frontline Roll Case 28" conveyor in a way that would prevent wood and/or debris from getting stuck between the rolls of the conveyor and exposing employees of the saw mills to severe and disabling injuries.

24.     Defendants owed a duty to Plaintiffs, and other users, consumers and sawmill employees to properly assemble and install, design, manufacture, market and/or sell or place into the stream of commerce conveyors consistent with the safety standards of American National Standards Institute (ANSI), Occupational Safety and Health Administration (OSHA), other safety standards and/laws and the laws of the State of Kentucky.

8

25.     Defendants breached this duty by marketing, assembling, installing, and/or manufacturing a Frontline Roll Case 28" conveyor system that:

a)      Would not prevent wood and/or debris from getting stuck between the rolls and exposing employees of the saw mills to severe and disabling injuries;

b)      Failed to provide the following: an accessible emergency shut off/brake system for a foreseeable area of exposure on the conveyor system, operator's manual, and maintenance manual;

c)      Did not meet the applicable requirements for design, construction, inspection, testing, maintenance, and operation;

d)      Did not have emergency stopping devices at each control station or a lock-out control system within easy reach of operating personnel;

e)      Did not have suitable guards placed to prevent access to the danger area;

f)      Did not have an overload device designed to quickly shut off the electric power or disconnect the conveyor or drive parts in the event of overload;

g)      Did not have suitable guards to protect working areas, isles or thoroughfares from the hazards or dislodged materials;

h)      Did not have practical, electrical and/or mechanical devices to automatically stop a conveyor when the conveyor, bin, hopper, chute, etc., to which it feeds, has been stopped or has been blocked with loads so that it cannot receive additional loads or material;

i)      Emergency stop switches were not provided at all points along the conveyor, where potential hazards exist;

9

     j)     Should have been guarded by hand rails, guard plates, etc., to minimize the possibility of operator's limbs or clothing being caught between the moving parts of the conveyor and/or the load, and stationary parts of the conveyor structure.

    26.     Defendants further breached their duty(ies) to Plaintiffs by:

     a)     Not developing and implementing an energy control program consisting of procedures, training and periodic inspections prior to any employee performing maintenance/service on equipment, such as, but not limited to, saws, conveyors, chipper/hog, etc. located at the work place where the unexpected energizing, start up or release of stored energy could occur and cause serious injury or death;

     b)     Not guarding the rotating 6" diameter metal screw rollers located on the Frontline Roll Case Conveyor in the Production Department; and

     c)     Not enclosing chains and sprockets on the Rip Saw Transfer Conveyor ("Unscrambler), located in the Production Department.

    27.     The above failures to properly assemble, install, design, manufacture, and install the conveyor system resulted in a hazardous condition.  A serious injury was foreseeable from this hazard to the designer, manufacturer, and installer. The above failures resulted in serious injuries to Plaintiff when his arm became entrapped in a conveyor roller that did not provide access to the emergency shut off/brake system.

    28.     As a direct and proximate result of the foregoing breach(es) of duty(ies), Plaintiff, Dave E. Trotter sustained severe and disabling injuries, serious mental and physical pain and suffering, lost wages and impairment of earning capacity, will incur future lost earnings, has incurred medical bills and related expenses, past, present and future, has incurred miscellaneous

inconvenience and expense, past, present and future. Defendants' negligence was a substantial factor in causing the injuries.

**COUNT II**
**NEGLIGENCE *PER SE* OF DEFENDANT, FRONTLINE EQUIPMENT, LLC AND PAUL ARBOGAST**

29.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 28 of this Complaint as if fully rewritten herein.

30.     Defendants owed a duty to Plaintiffs, and other users, consumers and sawmill employees to design, manufacture, market and/or sell or place into the stream of commerce conveyors in accordance with the safety standards of American National Standards Institute (ANSI), Occupational Safety and Health Administration (OSHA), other safety laws and the laws of the state of Kentucky.

31.     Defendants breached that duty by, among other things, failing to design, assemble, install, manufacture, market and/or sell or place into the stream of commerce conveyors that:

a)     Met the applicable requirements for design, construction, inspection, testing, maintenance, and operation, in accordance with the ANSI B20.1-1957, Safety Code for Conveyors, Cableways, and Related Equipment.

b)     Did not have emergency stopping devices at each control station or a lock-out control system within easy reach of operating personnel, in accordance with the ANSI Z50.1., Safety Standards, (4.3.2).

c)     Did not have suitable guards placed to prevent access to the danger area, in accordance with ANSI B20.1-1957, Safety Code for Conveyors, Cableways, and Related Equipment, 29 CFR 1926.555, Section 6, (605).

d)      Did not have an overload device designed to quickly shut off the electric power or disconnect the conveyor or drive parts in the event of overload, in accordance with ANSI B20.1-1957, Safety Code for Conveyors, Cableways, and Related Equipment, 29 CFR 1926.555, Section 6, (606).

e)      Did not have suitable guards to protect working areas, isles or thoroughfares from the hazards or dislodged materials, in accordance with ANSI B20.1-1957, Safety Code for Conveyors, Cableways, and Related Equipment, 29 CFR 1926.555, Section 6, (609).

f)      Did not have practical, electrical and/or mechanical devices to automatically stop a conveyor when the conveyor, bin, hopper, chute, etc., to which it feeds, has been stopped or has been blocked with loads so that it cannot receive additional loads or material, in accordance with ANSI B20.1-1957, Safety Code for Conveyors, Cableways, and Related Equipment, 29 CFR 1926.555, Section 6 (610).

g)      Emergency stop switches were not provided at all points along the conveyor, where potential hazards exist, in accordance with ANSI B20.1-1957, Safety Code for Conveyors, Cableways, and Related Equipment, 29 CFR 1926.555, Section 11 (b).

h)      Should have been guarded by hand rails, guard plates, etc., to minimize the possibility of operator's limbs or clothing being caught between the moving parts of the conveyor and/or the load, and stationary parts of the conveyor structure, in accordance with ANSI B20.1-1957, Safety Code for Conveyors, Cableways, and Related Equipment, 29 CFR 1926.555, Section 17.    .

32.    Defendants further breached this duty by failing:

a)      to develop and implement an energy control program consisting of procedures, training and periodic inspections prior to any employee performing maintenance/service on

12

equipment, such as, but not limited to, saws, conveyors, chipper/hog, etc. located at the work place where the unexpected energizing, start up or release of stored energy could occur and cause serious injury or death, in accordance with 29 CFR1910.147(c)(1);

b)      to guard the rotating 6" diameter metal screw rollers located on the Frontline Roll Case Conveyor in the Production Department, in accordance with 29 CFR 1910.212 (a)(1); and

c)      to enclose chains and sprockets on the Rip Saw Transfer Conveyor ("Unscrambler), located in the Production Department, in accordance with 29 CFR 1910.219(f)(3).

33.      As a direct and proximate result of Defendants' negligence, Plaintiff, Dave E. Trotter has endured pain and suffering, incurred medical expenses and miscellaneous expenses, has loss of income and will lose income in the future, and will continue to suffer and sustain losses, including but not limited to, future pain and suffering, and medical expenses.

34.      Defendants' negligence *per se* was a substantial factor in causing said injuries and losses.

### COUNT III
### NEGLIGENT DESIGN OF DEFENDANTS, FRONTLINE EQUIPMENT, LLC AND PAUL ARBOGAST

35.      Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 34 of this Complaint as if fully rewritten herein.

36.      Defendants directly participated in the design, assembling, installing, manufacture, marketing, selling, approval of and/or certification of the safety of or placing into the stream of commerce the conveyors.

37.      Defendants knew or should have known that the conveyors (system) would reach users, consumers and sawmills in substantially the same state and knew or should have known that

the conveyors were destined for use in situations where a piece of bark might get stuck between the rolls as they travel on the conveyor and that sawmill employees would rely on the ability of the conveyor to protect them from getting injured. Defendants therefore had a duty to design, manufacture, market, sell, approve of and/or certify the safety of the conveyors in a way that would prevent barks from getting jammed between the rolls of the conveyor and exposing employees of the saw mills to severe and disabling injuries.

38.    Defendants breached this duty by designing, assembling, installing, manufacturing, marketing, selling, approving and or certifying the safety of the conveyors that failed to provide the following: an accessible emergency shut off/brake system for a foreseeable area of exposure on the conveyor system, warnings, operator's manual, and maintenance manual. The failure to properly design, manufacture, and install the conveyor with an emergency cut off/brake system that was accessible in a foreseeable area of exposure on the conveyor system resulted in a hazardous condition. A serious injury was foreseeable from this hazard to the designer, manufacturer, and installer. The above failures resulted in serious injuries to Plaintiff when his hand became entrapped in a conveyor roller that did not provide access to the emergency shut off/brake system.

39.    As a direct and proximate result of the foregoing breach of duty, Plaintiff, Dave E. Trotter has incurred medical bills and will incur medical bills in the future, suffered severe and disabling injuries, lost the capacity to earn money, has endured pain and suffering and lost enjoyment of his life. Defendants' negligence was a substantial factor in causing the injuries.

## COUNT IV
## NEGLIGENT FAILURE TO WARN OF DEFENDANTS FRONTLINE EQUIPMENT, LLC AND PAUL ARBOGAST

40.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 39 of this Complaint as if fully rewritten herein.

41.     Defendants at all relevant times, were engaged in the business of designing, assembling, installing, manufacturing, advertising, marketing, approving of, certifying the safety of and selling of the conveyors for use in sawmill, to the owners of the sawmills and ultimately to its users and consumers, including Dave E. Trotter.  Defendants had a duty to warn the owners of sawmills and the ultimate users and consumers of the conveyors of its defective nature.

42.     Defendants were aware or through the exercise of reasonable diligence and ordinary care should have been aware of the unreasonably dangerous condition of the conveyor system installed and Defendants breached that duty by failing to warn the owners of sawmills and the ultimate users and consumers of the conveyors of its defective nature.  Appropriate warnings regarding the potential "caught by" conveyor hazard and ensuing use of the emergency shut off cable and an operator's manual with safe setup and use instructions as well as hazard warnings would have communicated the hazardous, defective, and dangerous condition to subsequent purchasers and users.

43.     As a direct and proximate result of the foregoing breach of duty, Plaintiff, Dave E. Trotter has incurred medical bills and will incur medical bills in the future, suffered severe and disabling injuries, lost the capacity to earn money, has endured pain and suffering and lost enjoyment of his life.  Defendants' negligence was a substantial factor in causing the injuries.

## COUNT V
## STRICT LIABILITY OF DEFENDANTS, FRONTLINE EQUIPMENT, LLC
## DUE TO ITS DEFECTIVE DESIGN AND MANUFACTURING DEFECT OF THE
## FRONTLINE ROLL CASE 28" CONVEYOR AND PAUL ARBOGAST

44.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 43 of this Complaint as if fully rewritten herein.

45.    Defendants, at all relevant times, were engaged in the business of manufacturing, assembling, installing, modifying, advertising, marketing and selling of the Frontline Roll Case 28" conveyor (system), for transportation of wooden boards, in sawmills, to the owners of the sawmills and ultimately to the users and consumers, including David Trotter.  Plaintiff states that the Frontline Roll Case 28" conveyor (system) being used by his Employer, Larix Inc. on October 18, 2017, was designed, assembled, installed, manufactured, modified, advertised and/or sold by the Defendants.

46.    Defendants were aware or through the exercise of reasonable diligence and ordinary care should have been aware of the unreasonably dangerous condition of the Frontline Roll Case 28" conveyor (system) for use in a sawmill due to a defective design and a defect in manufacturing, assembling, and/or installation.

47.    Defendants' product was dangerous and unfit for the purpose for which it was intended to be used due to its defective design and a defect in manufacturing.

48.    The defectiveness of the Frontline Roll Case 28" conveyor (system) was a direct and proximate cause of the Dave E. Trotter's injuries and the Defendants' placing of a defective and unreasonably dangerous product in the stream of commerce which ultimately reached the employees at Larix, Inc. was a direct and proximate cause of the injuries that Dave E. Trotter sustained on October 18, 2017 as described herein.

16

49.      Defendants were aware or through the exercise of reasonable diligence and ordinary care should have been aware of the unreasonably dangerous condition of the Frontline Roll Case 28" conveyor for use in a sawmill and that under such conditions the Defendants had an obligation to assure that each Frontline Roll Case 28" conveyor was designed and manufactured in a safe and reasonable manner, including the Frontline Roll Case 28" conveyor operated by Dave E. Trotter.

## COUNT VI
## STRICT LIABILITY OF DEFENDANT FRONTLINE EQUIPMENT, LLC DUE TO ITS FAILURE TO WARN

50.      Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 49 of this Complaint as if fully rewritten herein.

51.      Defendant, at all relevant times, were engaged in the business of designing, manufacturing, assembling, installing, modifying, advertising, marketing and selling of the Frontline Roll Case 28" conveyor, for use in sawmills, to the owners of the sawmills and ultimately to the users and consumers of Frontline Roll Case 28" conveyor (system), including Dave E. Trotter.  Plaintiff states that the Frontline Roll Case 28" conveyor (system) involved with injuring Dave E. Trotter was driving on October 18, 2017 was manufactured and/or modified by Defendant.

52.      Defendant, by placing its product into the stream of commerce, implied by warranty that the Frontline Roll Case 28" conveyor (system) was of good and merchantable quality for its ordinary and intended use and foreseeable misuse.

53.      Defendant placed this product into the stream of commerce in a condition unreasonably hazardous to the intended user or consumer and the intended user or consumer could not discover this defect in the intended and ordinary use of the Defendant's product.  The

defective nature of the Defendant's product was present when the Frontline Roll Case 28"

conveyor left the control of the Defendant and the Frontline Roll Case 28" conveyor, at all times

relevant herein, was in substantially the same condition as at the time it left the Defendant's

control and the Frontline Roll Case 28" conveyor had not been substantially altered from the time

it left the Defendants control to the time it reached the hands of the ultimate user and consumer.

  54. Defendant was aware or, through the exercise of reasonable diligence and ordinary

care, should have been aware of the unreasonably dangerous condition of the Frontline Roll Case

28" conveyor (system) for use in a sawmill and further that under such conditions, Defendant had

an obligation to warn or make safe and failed to warn Dave E. Trotter of the defective nature of

the Frontline Roll Case 28" conveyor.

  55. Defendant's product was dangerous and unfit for the purpose for which it was

intended to be used due to its defective warning.

  56. The defectiveness of the Frontline Roll Case 28" conveyor (system) was a direct

and proximate cause of Dave E. Trotter's injuries and Defendant's placing of a defective and

unreasonably dangerous product in the stream of commerce which ultimately reached the

employees at Larix, Inc., and was a direct and proximate cause of the injuries that Dave E. Trotter

sustained on October 18, 2018 as described herein.

**COUNT VII**
**NEGLIGENCE OF DEFENDANT RECKART EQUIPMENT COMPANY, INC.**

  57. Plaintiffs incorporate by reference the allegations contained in Paragraphs 1

through 56 of this Complaint as if fully rewritten herein.

  58. Defendant Reckart Equipment Company, Inc., by and through its' agents,

employees and/or contractors directly participated in the design, manufacture, assembling,

installing, marketing and/or selling or placing into the stream of commerce the Frontline Roll Case 28" conveyor system within the boundaries of the Commonwealth of Kentucky.

59.     Defendant Reckart Equipment Company, Inc. knew or should have known that the Frontline Roll Case 28" conveyor system would reach users, consumers and sawmill employees in the Commonwealth of Kentucky and knew or should have known that the Frontline Roll Case 28" conveyor system was destined for use in situations where the wood and/or debris might/would get stuck between the rolls as the wood and/or debris traveled on the conveyor and that sawmill employees would rely on the ability of the conveyor to protect them from getting injured. Defendant Reckart Equipment Company, Inc. therefore had a duty to manufacture, assemble, and/or install the Frontline Roll Case 28" conveyor in a way that would prevent wood and/or debris from getting stuck between the rolls of the conveyor and exposing employees of the saw mills to severe and disabling injuries.

60.     Defendant Reckart Equipment Company, Inc. owed a duty to Plaintiffs, and other users, consumers and sawmill employees to properly assemble and install, design, manufacture, market and/or sell or place into the stream of commerce conveyors consistent with the safety standards of American National Standards Institute (ANSI), Occupational Safety and Health Administration (OSHA), other safety standards and/laws and the laws of the State of Kentucky.

61.     Defendant Reckart Equipment Company, Inc. breached this duty by marketing, assembling, installing, and/or manufacturing a Frontline Roll Case 28" conveyor system that:

a)     Would not prevent wood and/or debris from getting stuck between the rolls and exposing employees of the saw mills to severe and disabling injuries;

b)      Failed to provide the following: an accessible emergency shut off/brake system for a foreseeable area of exposure on the conveyor system, operator's manual, and maintenance manual;

c)      Did not meet the applicable requirements for design, construction, inspection, testing, maintenance, and operation;

d)      Did not have emergency stopping devices at each control station or a lock-out control system within easy reach of operating personnel;

e)      Did not have suitable guards placed to prevent access to the danger area;

f)      Did not have an overload device designed to quickly shut off the electric power or disconnect the conveyor or drive parts in the event of overload;

g)      Did not have suitable guards to protect working areas, isles or thoroughfares from the hazards or dislodged materials;

h)      Did not have practical, electrical and/or mechanical devices to automatically stop a conveyor when the conveyor, bin, hopper, chute, etc., to which it feeds, has been stopped or has been blocked with loads so that it cannot receive additional loads or material;

i)      Emergency stop switches were not provided at all points along the conveyor, where potential hazards exist;

j)      Should have been guarded by hand rails, guard plates, etc., to minimize the possibility of operator's limbs or clothing being caught between the moving parts of the conveyor and/or the load, and stationary parts of the conveyor structure.

62.      Defendant Reckart Equipment Company, Inc. further breached their duty(ies) to Plaintiffs by:

20

a)      Not developing and implementing an energy control program consisting of procedures, training and periodic inspections prior to any employee performing maintenance/service on equipment, such as, but not limited to, saws, conveyors, chipper/hog, etc. located at the work place where the unexpected energizing, start up or release of stored energy could occur and cause serious injury or death;

b)      Not guarding the rotating 6" diameter metal screw rollers located on the Frontline Roll Case Conveyor in the Production Department; and

c)      Not enclosing chains and sprockets on the Rip Saw Transfer Conveyor ("Unscrambler), located in the Production Department.

63.     The above failures to properly assemble, install, design, manufacture, and install the conveyor system resulted in a hazardous condition.  A serious injury was foreseeable from this hazard to the designer, manufacturer, and installer. The above failures resulted in serious injuries to Plaintiff when his arm became entrapped in a conveyor roller that did not provide access to the emergency shut off/brake system.

64.     As a direct and proximate result of the foregoing breach(es) of duty(ies), Plaintiff, Dave E. Trotter sustained severe and disabling injuries, serious mental and physical pain and suffering, lost wages and impairment of earning capacity, will incur future lost earnings, has incurred medical bills and related expenses, past, present and future, has incurred miscellaneous inconvenience and expense, past, present and future.  Defendant Reckart Equipment Company, Inc's negligence was a substantial factor in causing the injuries.

## COUNT VIII
## NEGLIGENCE *PER SE* OF DEFENDANT RECKART EQUIPMENT COMPANY, INC.

65.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 64 of this Complaint as if fully rewritten herein.

66.     Defendant Reckart Equipment Company, Inc. owed a duty to Plaintiffs, and other users, consumers and sawmill employees to design, manufacture, market and/or sell or place into the stream of commerce conveyors in accordance with the safety standards of American National Standards Institute (ANSI), Occupational Safety and Health Administration (OSHA), other safety laws and the laws of the state of Kentucky.

67.     Defendant Reckart Equipment Company, Inc. breached that duty by, among other things, failing to design, assemble, install, manufacture, market and/or sell or place into the stream of commerce conveyors that:

a)      Met the applicable requirements for design, construction, inspection, testing, maintenance, and operation, in accordance with the ANSI B20.1-1957, Safety Code for Conveyors, Cableways, and Related Equipment.

b)      Did not have emergency stopping devices at each control station or a lock-out control system within easy reach of operating personnel, in accordance with the ANSI Z50.1., Safety Standards, (4.3.2).

c)      Did not have suitable guards placed to prevent access to the danger area, in accordance with ANSI B20.1-1957, Safety Code for Conveyors, Cableways, and Related Equipment, 29 CFR 1926.555, Section 6, (605).

d)      Did not have an overload device designed to quickly shut off the electric power or disconnect the conveyor or drive parts in the event of overload, in accordance with ANSI B20.1-1957, Safety Code for Conveyors, Cableways, and Related Equipment, 29 CFR 1926.555, Section 6, (606).

e)      Did not have suitable guards to protect working areas, isles or thoroughfares from the hazards or dislodged materials, in accordance with ANSI B20.1-1957, Safety Code for Conveyors, Cableways, and Related Equipment, 29 CFR 1926.555, Section 6, (609).

f)      Did not have practical, electrical and/or mechanical devices to automatically stop a conveyor when the conveyor, bin, hopper, chute, etc., to which it feeds, has been stopped or has been blocked with loads so that it cannot receive additional loads or material, in accordance with ANSI B20.1-1957, Safety Code for Conveyors, Cableways, and Related Equipment, 29 CFR 1926.555, Section 6 (610).

g)      Emergency stop switches were not provided at all points along the conveyor, where potential hazards exist, in accordance with ANSI B20.1-1957, Safety Code for Conveyors, Cableways, and Related Equipment, 29 CFR 1926.555, Section 11 (b).

h)      Should have been guarded by hand rails, guard plates, etc., to minimize the possibility of operator's limbs or clothing being caught between the moving parts of the conveyor and/or the load, and stationary parts of the conveyor structure, in accordance with ANSI B20.1-1957, Safety Code for Conveyors, Cableways, and Related Equipment, 29 CFR 1926.555, Section 17.

68.     Defendant Reckart Equipment Company, Inc. further breached this duty by failing:

a)      to develop and implement an energy control program consisting of procedures, training and periodic inspections prior to any employee performing maintenance/service on equipment, such as, but not limited to, saws, conveyors, chipper/hog, etc. located at the work place where the unexpected energizing, start up or release of stored energy could occur and cause serious injury or death, in accordance with 29 CFR1910.147(c)(1);

23

b)  to guard the rotating 6" diameter metal screw rollers located on the Frontline Roll

Case Conveyor in the Production Department, in accordance with 29 CFR 1910.212 (a)(1); and

c)  to enclose chains and sprockets on the Rip Saw Transfer Conveyor

("Unscrambler), located in the Production Department, in accordance with 29 CFR

1910.219(f)(3).

69.  As a direct and proximate result of Defendant Reckart Equipment Company, Inc.'s

negligence, Plaintiff, Dave E. Trotter has endured pain and suffering, incurred medical expenses

and miscellaneous expenses, has loss of income and will lose incur in the future, and will continue

to suffer and sustain losses, including but not limited to, future pain and suffering, and medical

expenses as described herein.

70.  Defendant Reckart Equipment Company, Inc.'s negligence *per se* was a substantial

factor in causing said injuries and losses.

**COUNT IX**
**NEGLIGENT DESIGN OF DEFENDANT RECKART EQUIPMENT COMPANY, INC.**

71.  Plaintiffs incorporate by reference the allegations contained in Paragraphs 1

through 70 of this Complaint as if fully rewritten herein.

72.  Defendant Reckart Equipment Company, Inc. directly participated in the design,

assembling, installing, manufacture, marketing, selling, approval of and/or certification of the

safety of or placing into the stream of commerce the conveyors.

73.  Defendant Reckart Equipment Company, Inc. knew or should have known that the

conveyors (system) would reach users, consumers and sawmills in substantially the same state and

knew or should have known that the conveyors were destined for use in situations where a piece

of bark might get stuck between the rolls as they travel on the conveyor and that sawmill

employees would rely on the ability of the conveyor to protect them from getting injured.

Defendant Reckart Equipment Company, Inc.therefore had a duty to design, manufacture, market, sell, approve of and/or certify the safety of the conveyors in a way that would prevent wood and pieces of tree bark from getting jammed between the rolls of the conveyor and exposing employees of the saw mills to severe and disabling injuries.

74.     Defendant Reckart Equipment Company, Inc. breached this duty by designing, assembling, installing, manufacturing, marketing, selling, approving and or certifying the safety of the conveyors that failed to provide the following: an accessible emergency shut off/brake system for a foreseeable area of exposure on the conveyor system, warnings, operator's manual, and maintenance manual. The failure to properly design, manufacture, and install the conveyor with an emergency cut off/brake system that was accessible in a foreseeable area of exposure on the conveyor system resulted in a hazardous condition. A serious injury was foreseeable from this hazard to the designer, manufacturer, and installer. The above failures resulted in serious injuries to Plaintiff when his hand became entrapped in a conveyor roller that did not provide access to the emergency shut off/brake system.

75.     As a direct and proximate result of the foregoing breach of duty, Plaintiff, Dave E. Trotter has incurred medical bills and will incur medical bills in the future, suffered severe and disabling injuries, lost the capacity to earn money, has endured pain and suffering and lost enjoyment of his life.  Defendant Reckart Equipment Company, Inc.'s negligence was a substantial factor in causing the injuries.

## COUNT X
## NEGLIGENT FAILURE TO WARN OF DEFENDANT RECKART EQUIPMENT COMPANY, INC.

76.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 75 of this Complaint as if fully rewritten herein.

77.     Defendant Reckart Equipment Company, Inc. at all relevant times, were engaged in the business of designing, assembling, installing, manufacturing, advertising, marketing, approving of, certifying the safety of and selling of the conveyors for use in sawmill, to the owners of the sawmills and ultimately to its users and consumers, including Dave E. Trotter. Defendant Reckart Equipment Company, Inc. had a duty to warn the owners of sawmills and the ultimate users and consumers of the conveyors of its defective nature.

78.     Defendant Reckart Equipment Company, Inc. was aware or through the exercise of reasonable diligence and ordinary care should have been aware of the unreasonably dangerous condition of the conveyor system installed and Defendant Reckart Equipment Company, Inc. breached that duty by failing to warn the owners of sawmills and the ultimate users and consumers of the conveyors of its defective nature.  Appropriate warnings regarding the potential "caught by" conveyor hazard and ensuing use of the emergency shut off cable and an operator's manual with safe setup and use instructions as well as hazard warnings would have communicated the hazardous, defective, and dangerous condition to subsequent purchasers and users.

79.     As a direct and proximate result of the foregoing breach of duty, Plaintiff, Dave E. Trotter has incurred medical bills and will incur medical bills in the future, suffered severe and disabling injuries, lost the capacity to earn money, has endured pain and suffering and lost enjoyment of his life.  Defendant Reckart Equipment Company, Inc.'s negligence was a substantial factor in causing the injuries.

## COUNT XI
## STRICT LIABILITY OF DEFENDANT RECKART EQUIPMENT COMPANY, INC. DUE TO ITS DEFECTIVE DESIGN AND MANUFACTURING DEFECT OF THE FRONTLINE ROLL CASE 28" CONVEYOR AND PAUL ARBOGAST

80.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 79 of this Complaint as if fully rewritten herein.

26

81.     Defendant Reckart Equipment Company, Inc., at all relevant times, were engaged in the business of manufacturing, assembling, installing, modifying, advertising, marketing and selling of the Frontline Roll Case 28" conveyor (system), for transportation of wooden boards, in sawmills, to the owners of the sawmills and ultimately to the users and consumers, including David Trotter.  Plaintiff states that the Frontline Roll Case 28" conveyor (system) being used by his Employer, Larix Inc. on October 18, 2017, was designed, assembled, installed, manufactured, modified, advertised and/or sold by the Defendants.

82.     Defendant Reckart Equipment Company, Inc.was aware or through the exercise of reasonable diligence and ordinary care should have been aware of the unreasonably dangerous condition of the Frontline Roll Case 28" conveyor (system) for use in a sawmill due to a defective design and a defect in manufacturing, assembling, and/or installation.

83.     Defendant Reckart Equipment Company, Inc.'s product was dangerous and unfit for the purpose for which it was intended to be used due to its defective design and a defect in manufacturing.

84.     The defectiveness of the Frontline Roll Case 28" conveyor (system) was a direct and proximate cause of the Dave E. Trotter's injuries and the Defendants' placing of a defective and unreasonably dangerous product in the stream of commerce which ultimately reached the employees at Larix, Inc. was a direct and proximate cause of the injuries that Dave E. Trotter sustained on October 18, 2017.

85.     Defendant Reckart Equipment Company, Inc. was aware or through the exercise of reasonable diligence and ordinary care should have been aware of the unreasonably dangerous condition of the Frontline Roll Case 28" conveyor for use in a sawmill and that under such conditions the Defendant Reckart Equipment Company, Inc. had an obligation to assure that each

Frontline Roll Case 28" conveyor was designed and manufactured in a safe and reasonable

manner, including the Frontline Roll Case 28" conveyor operated by Dave E. Trotter.

## COUNT XII
## STRICT LIABILITY OF DEFENDANT RECKART EQUIPMENT COMPANY, INC. DUE TO ITS FAILURE TO WARN

86.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1

through 85 of this Complaint as if fully rewritten herein.

87.     Upon belief and information Defendant Reckart Equipment Company, Inc., at all

relevant times, was engaged in the business of designing, manufacturing, assembling, installing,

modifying, advertising, marketing and selling of the Frontline Roll Case 28" conveyor, for use in

sawmills, to the owners of the sawmills and ultimately to the users and consumers of Frontline

Roll Case 28" conveyor (system), including Dave E. Trotter.  Plaintiff states that the Frontline

Roll Case 28" conveyor (system) involved with injuring Dave E. Trotter was driving on October

18, 2017 was manufactured and/or modified by Defendant.

88.     Defendant Reckart Equipment Company, Inc., by placing its product into the

stream of commerce, implied by warranty that the Frontline Roll Case 28" conveyor (system) was

of good and merchantable quality for its ordinary and intended use and foreseeable misuse.

89.     Defendant Reckart Equipment Company, Inc. placed this product into the stream of

commerce in a condition unreasonably hazardous to the intended user or consumer and the

intended user or consumer could not discover this defect in the intended and ordinary use of the

Defendant's product.  The defective nature of the Defendant's product was present when the

Frontline Roll Case 28" conveyor left the control of the Defendant and the Frontline Roll Case

28" conveyor, at all times relevant herein, was in substantially the same condition as [from a

safety standpoint]at the time it left the Defendant's control and the Frontline Roll Case 28"

28

conveyor had not been substantially altered from the time it left the Defendants control to the time it reached the hands of the ultimate user and consumer.

90.     Defendant Reckart Equipment Company, Inc. was aware or, through the exercise of reasonable diligence and ordinary care, should have been aware of the unreasonably dangerous condition of the Frontline Roll Case 28" conveyor (system) for use in a sawmill and further that under such conditions, Defendant Reckart Equipment Company, Inc. had an obligation to warn or make safe and failed to warn Dave E. Trotter of the defective nature of the Frontline Roll Case 28" conveyor.

91.     Defendant Reckart Equipment Company, Inc.'s product was dangerous and unfit for the purpose for which it was intended to be used due to its defective warning.

92.     The defectiveness of the Frontline Roll Case 28" conveyor (system) was a direct and proximate cause of Dave E. Trotter's injuries and Defendant Reckart Equipment Company, Inc.'s placing of a defective and unreasonably dangerous product in the stream of commerce which ultimately reached the employees at Larix, Inc., and was a direct and proximate cause of the injuries that Dave E. Trotter sustained on October 18, 2018 as described herein.

## COUNT XIII
## NEGLIGENCE OF DEFENDANT PEIGHT'S WELDING SHOP

93.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 92 of this Complaint as if fully rewritten herein.

94.     Upon belief and information Defendant Peight's Welding Shop, by and through its' agents, employees and/or contractors directly participated in the design, manufacture, assembling, installing, marketing and/or selling or placing into the stream of commerce the Frontline Roll Case 28" conveyor system within the boundaries of the Commonwealth of Kentucky.

29

95.     Defendant Peight's Welding Shop knew or should have known that the Frontline Roll Case 28" conveyor system would reach users, consumers and sawmill employees in the Commonwealth of Kentucky and knew or should have known that the Frontline Roll Case 28" conveyor system was destined for use in situations where the wood and/or debris might/would get stuck between the rolls as the wood and/or debris traveled on the conveyor and that sawmill employees would rely on the ability of the conveyor to protect them from getting injured. Defendant Peight's Welding Shop therefore had a duty to manufacture, assemble, and/or install the Frontline Roll Case 28" conveyor in a way that would prevent wood and/or debris from getting stuck between the rolls of the conveyor and exposing employees of the saw mills to severe and disabling injuries.

96.     Defendant Peight's Welding Shop owed a duty to Plaintiffs, and other users, consumers and sawmill employees to properly assemble and install, design, manufacture, market and/or sell or place into the stream of commerce conveyors consistent with the safety standards of American National Standards Institute (ANSI), Occupational Safety and Health Administration (OSHA), other safety standards and/laws and the laws of the State of Kentucky.

97.     Defendant Peight's Welding Shop breached this duty by marketing, assembling, installing, and/or manufacturing a Frontline Roll Case 28" conveyor system that:

a)     Would not prevent wood and/or debris from getting stuck between the rolls and exposing employees of the saw mills to severe and disabling injuries;

b)     Failed to provide the following: an accessible emergency shut off/brake system for a foreseeable area of exposure on the conveyor system, operator's manual, and maintenance manual;

30

     c)     Did not meet the applicable requirements for design, construction, inspection, testing, maintenance, and operation;

     d)     Did not have emergency stopping devices at each control station or a lock-out control system within easy reach of operating personnel;

     e)     Did not have suitable guards placed to prevent access to the danger area;

     f)     Did not have an overload device designed to quickly shut off the electric power or disconnect the conveyor or drive parts in the event of overload;

     g)     Did not have suitable guards to protect working areas, isles or thoroughfares from the hazards or dislodged materials;

     h)     Did not have practical, electrical and/or mechanical devices to automatically stop a conveyor when the conveyor, bin, hopper, chute, etc., to which it feeds, has been stopped or has been blocked with loads so that it cannot receive additional loads or material;

     i)     Emergency stop switches were not provided at all points along the conveyor, where potential hazards exist;

     j)     Should have been guarded by hand rails, guard plates, etc., to minimize the possibility of operator's limbs or clothing being caught between the moving parts of the conveyor and/or the load, and stationary parts of the conveyor structure.

     98.     Defendant Peight's Welding Shop further breached their duty(ies) to Plaintiffs by:

     a)     Not developing and implementing an energy control program consisting of procedures, training and periodic inspections prior to any employee performing maintenance/service on equipment, such as, but not limited to, saws, conveyors, chipper/hog, etc. located at the work place where the unexpected energizing, start up or release of stored energy could occur and cause serious injury or death;

b)    Not guarding the rotating 6" diameter metal screw rollers located on the Frontline Roll Case Conveyor in the Production Department; and

c)    Not enclosing chains and sprockets on the Rip Saw Transfer Conveyor ("Unscrambler), located in the Production Department.

99.    The above failures to properly assemble, install, design, manufacture, and install the conveyor system resulted in a hazardous condition.  A serious injury was foreseeable from this hazard to the designer, manufacturer, and installer. The above failures resulted in serious injuries to Plaintiff when his arm became entrapped in a conveyor roller that did not provide access to the emergency shut off/brake system.

100.    As a direct and proximate result of the foregoing breach(es) of duty(ies), Plaintiff, Dave E. Trotter sustained severe and disabling injuries, serious mental and physical pain and suffering, lost wages and impairment of earning capacity, will incur future lost earnings, has incurred medical bills and related expenses, past, present and future, has incurred miscellaneous inconvenience and expense, past, present and future. Defendant Peight's Welding Shop's negligence was a substantial factor in causing the injuries.

## COUNT XIV
## NEGLIGENCE *PER SE* OF DEFENDANT PEIGHT'S WELDING SHOP

101.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 100 of this Complaint as if fully rewritten herein.

102.    Upon belief and information Defendant Peight's Welding Shop owed a duty to Plaintiffs, and other users, consumers and sawmill employees to design, manufacture, market and/or sell or place into the stream of commerce conveyors in accordance with the safety standards of American National Standards Institute (ANSI), Occupational Safety and Health Administration (OSHA), other safety laws and the laws of the state of Kentucky.

103.    Defendant Peight's Welding Shop breached that duty by, among other things, failing to design, assemble, install, manufacture, market and/or sell or place into the stream of commerce conveyors that:

a)      Met the applicable requirements for design, construction, inspection, testing, maintenance, and operation, in accordance with the ANSI B20.1-1957, Safety Code for Conveyors, Cableways, and Related Equipment.

b)      Did not have emergency stopping devices at each control station or a lock-out control system within easy reach of operating personnel, in accordance with the ANSI Z50.1., Safety Standards, (4.3.2).

c)      Did not have suitable guards placed to prevent access to the danger area, in accordance with ANSI B20.1-1957, Safety Code for Conveyors, Cableways, and Related Equipment, 29 CFR 1926.555, Section 6, (605).

d)      Did not have an overload device designed to quickly shut off the electric power or disconnect the conveyor or drive parts in the event of overload, in accordance with ANSI B20.1-1957, Safety Code for Conveyors, Cableways, and Related Equipment, 29 CFR 1926.555, Section 6, (606).

e)      Did not have suitable guards to protect working areas, isles or thoroughfares from the hazards or dislodged materials, in accordance with ANSI B20.1-1957, Safety Code for Conveyors, Cableways, and Related Equipment, 29 CFR 1926.555, Section 6, (609).

f)      Did not have practical, electrical and/or mechanical devices to automatically stop a conveyor when the conveyor, bin, hopper, chute, etc., to which it feeds, has been stopped or has been blocked with loads so that it cannot receive additional loads or material, in accordance with

33

ANSI B20.1-1957, Safety Code for Conveyors, Cableways, and Related Equipment, 29 CFR 1926.555, Section 6 (610).

g)      Emergency stop switches were not provided at all points along the conveyor, where potential hazards exist, in accordance with ANSI B20.1-1957, Safety Code for Conveyors, Cableways, and Related Equipment, 29 CFR 1926.555, Section 11 (b).

h)      Should have been guarded by hand rails, guard plates, etc., to minimize the possibility of operator's limbs or clothing being caught between the moving parts of the conveyor and/or the load, and stationary parts of the conveyor structure, in accordance with ANSI B20.1-1957, Safety Code for Conveyors, Cableways, and Related Equipment, 29 CFR 1926.555, Section 17.

104.    Defendant Peight's Welding Shop further breached this duty by failing:

a)      to develop and implement an energy control program consisting of procedures, training and periodic inspections prior to any employee performing maintenance/service on equipment, such as, but not limited to, saws, conveyors, chipper/hog, etc. located at the work place where the unexpected energizing, start up or release of stored energy could occur and cause serious injury or death, in accordance with 29 CFR1910.147(c)(1);

b)      to guard the rotating 6" diameter metal screw rollers located on the Frontline Roll Case Conveyor in the Production Department, in accordance with 29 CFR 1910.212 (a)(1); and

c)      to enclose chains and sprockets on the Rip Saw Transfer Conveyor ("Unscrambler), located in the Production Department, in accordance with 29 CFR 1910.219(f)(3).

105.    As a direct and proximate result of Defendant Peight's Welding Shop's negligence, Plaintiff, Dave E. Trotter has endured pain and suffering, incurred medical expenses and

miscellaneous expenses, has loss of income and will lose incur in the future, and will continue to

suffer and sustain losses, including but not limited to, future pain and suffering, and medical

expenses.

106.    Defendant Peight's Welding Shop's negligence *per se* was a substantial factor in

causing said injuries and losses.

**COUNT XV**
**NEGLIGENT DESIGN OF DEFENDANT RECKART EQUIPMENT COMPANY, INC.**

107.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1

through 106 of this Complaint as if fully rewritten herein.

108.    Defendant Peight's Welding Shop directly participated in the design, assembling,

installing, manufacture, marketing, selling, approval of and/or certification of the safety of or

placing into the stream of commerce the conveyors.

109.    Defendant Peight's Welding Shop knew or should have known that the conveyors

(system) would reach users, consumers and sawmills in substantially the same state and knew or

should have known that the conveyors were destined for use in situations where a piece of bark

might get stuck between the rolls as they travel on the conveyor and that sawmill employees

would rely on the ability of the conveyor to protect them from getting injured.  Defendant Peight's

Welding Shop therefore had a duty to design, manufacture, market, sell, approve of and/or certify

the safety of the conveyors in a way that would prevent barks from getting jammed between the

rolls of the conveyor and exposing employees of the saw mills to severe and disabling injuries.

110.    Defendant Peight's Welding Shop breached this duty by designing, assembling,

installing, manufacturing, marketing, selling, approving and or certifying the safety of the

conveyors that failed to provide the following: an accessible emergency shut off/brake system for

a foreseeable area of exposure on the conveyor system, warnings, operator's manual, and

35

maintenance manual. The failure to properly design, manufacture, and install the conveyor with an emergency cut off/brake system that was accessible in a foreseeable area of exposure on the conveyor system resulted in a hazardous condition.  A serious injury was foreseeable from this hazard to the designer, manufacturer, and installer. The above failures resulted in serious injuries to Plaintiff when his hand became entrapped in a conveyor roller that did not provide access to the emergency shut off/brake system.

111.    As a direct and proximate result of the foregoing breach of duty, Plaintiff, Dave E. Trotter has incurred medical bills and will incur medical bills in the future, suffered severe and disabling injuries, lost the capacity to earn money, has endured pain and suffering and lost enjoyment of his life.  Defendant Peight's Welding Shop's negligence was a substantial factor in causing the injuries.

### COUNT XVI
### NEGLIGENT FAILURE TO WARN OF DEFENDANT PEIGHT'S WELDING SHOP

112.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 111 of this Complaint as if fully rewritten herein.

113.    Defendant Peight's Welding Shop at all relevant times, were engaged in the business of designing, assembling, installing, manufacturing, advertising, marketing, approving of, certifying the safety of and selling of the conveyors for use in sawmill, to the owners of the sawmills and ultimately to its users and consumers, including Dave E. Trotter.  Defendant Peight's Welding Shop had a duty to warn the owners of sawmills and the ultimate users and consumers of the conveyors of its defective nature.

114.    Defendant Peight's Welding Shop was aware or through the exercise of reasonable diligence and ordinary care should have been aware of the unreasonably dangerous condition of the conveyor system installed and Defendant Peight's Welding Shop breached that duty by failing

to warn the owners of sawmills and the ultimate users and consumers of the conveyors of its defective nature. Appropriate warnings regarding the potential "caught by" conveyor hazard and ensuing use of the emergency shut off cable and an operator's manual with safe setup and use instructions as well as hazard warnings would have communicated the hazardous, defective, and dangerous condition to subsequent purchasers and users.

115.    As a direct and proximate result of the foregoing breach of duty, Plaintiff, Dave E. Trotter has incurred medical bills and will incur medical bills in the future, suffered severe and disabling injuries, lost the capacity to earn money, has endured pain and suffering and lost enjoyment of his life. Defendant Peight's Welding Shop's negligence was a substantial factor in causing the injuries.

### COUNT XVII
### STRICT LIABILITY OF DEFENDANT PEIGHT'S WELDING SHOP DUE TO ITS DEFECTIVE DESIGN AND MANUFACTURING DEFECT OF THE FRONTLINE ROLL CASE 28" CONVEYOR AND PAUL ARBOGAST

116.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 115 of this Complaint as if fully rewritten herein.

117.    Defendant Peight's Welding Shop, at all relevant times, were engaged in the business of manufacturing, assembling, installing, modifying, advertising, marketing and selling of the Frontline Roll Case 28" conveyor (system), for transportation of wooden boards, in sawmills, to the owners of the sawmills and ultimately to the users and consumers, including David Trotter. Plaintiff states that the Frontline Roll Case 28" conveyor (system) being used by his Employer, Larix Inc. on October 18, 2017, was designed, assembled, installed, manufactured, modified, advertised and/or sold by the Defendants.

118.    Defendant Reckart Equipment Company, Inc.was aware or through the exercise of reasonable diligence and ordinary care should have been aware of the unreasonably dangerous

condition of the Frontline Roll Case 28" conveyor (system) for use in a sawmill due to a defective design and a defect in manufacturing, assembling, and/or installation.

119.    Defendant Peight's Welding Shop's product was dangerous and unfit for the purpose for which it was intended to be used due to its defective design and a defect in manufacturing.

120.    The defectiveness of the Frontline Roll Case 28" conveyor (system) was a direct and proximate cause of the Dave E. Trotter's injuries and the Defendants' placing of a defective and unreasonably dangerous product in the stream of commerce which ultimately reached the employees at Larix, Inc. was a direct and proximate cause of the injuries that Dave E. Trotter sustained on October 18, 2017.

121.    Defendant Peight's Welding Shop was aware or through the exercise of reasonable diligence and ordinary care should have been aware of the unreasonably dangerous condition of the Frontline Roll Case 28" conveyor for use in a sawmill and that under such conditions the Defendant Peight's Welding Shop. had an obligation to assure that each Frontline Roll Case 28" conveyor was designed and manufactured in a safe and reasonable manner, including the Frontline Roll Case 28" conveyor operated by Dave E. Trotter.

## COUNT XVIII
## STRICT LIABILITY OF DEFENDANT PEIGHT'S WELDING SHOP DUE TO ITS FAILURE TO WARN

122.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 121 of this Complaint as if fully rewritten herein.

123.    Defendant Peight's Welding Shop at all relevant times, was engaged in the business of designing, manufacturing, assembling, installing, modifying, advertising, marketing and selling of the Frontline Roll Case 28" conveyor, for use in sawmills, to the owners of the

sawmills and ultimately to the users and consumers of Frontline Roll Case 28" conveyor (system), including Dave E. Trotter.  Plaintiff states that the Frontline Roll Case 28" conveyor (system) involved with injuring Dave E. Trotter was driving on October 18, 2017 was manufactured and/or modified by Defendant.

124.   Defendant Peight's Welding Shop, by placing its product into the stream of commerce, implied by warranty that the Frontline Roll Case 28" conveyor (system) was of good and merchantable quality for its ordinary and intended use and foreseeable misuse.

125.   Defendant Peight's Welding Shop placed this product into the stream of commerce in a condition unreasonably hazardous to the intended user or consumer and the intended user or consumer could not discover this defect in the intended and ordinary use of the Defendant's product.  The defective nature of the Defendant's product was present when the Frontline Roll Case 28" conveyor left the control of the Defendant and the Frontline Roll Case 28" conveyor, at all times relevant herein, was in substantially the same condition as at the time it left the Defendant's control and the Frontline Roll Case 28" conveyor had not been substantially altered from the time it left the Defendants control to the time it reached the hands of the ultimate user and consumer.

126.   Defendant Peight's Welding Shop was aware or, through the exercise of reasonable diligence and ordinary care, should have been aware of the unreasonably dangerous condition of the Frontline Roll Case 28" conveyor (system) for use in a sawmill and further that under such conditions, Defendant Peight's Welding Shop had an obligation to warn or make safe and failed to warn Dave E. Trotter of the defective nature of the Frontline Roll Case 28" conveyor.

127.   Defendant Peight's Welding Shop's product was dangerous and unfit for the purpose for which it was intended to be used due to its defective warning.

128.   The defectiveness of the Frontline Roll Case 28" conveyor (system) was a direct and proximate cause of Dave E. Trotter's injuries and Defendant Peight's Welding Shop's placing of a defective and unreasonably dangerous product in the stream of commerce which ultimately reached the employees at Larix, Inc., and was a direct and proximate cause of the injuries that Dave E. Trotter sustained on October 18, 2018 as described herein.

## COUNT XIX
### D. ZIMMERMAN ELECTRIC, INC.

129.   Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 128 of this Complaint as if fully rewritten herein.

130.   Defendant, D. Zimmerman Electric, Inc., is a Pennsylvania Corporation with its statutory home office located at 55 Zimmerman Lane, Beaver Springs, Pennsylvania 17812, d/b/a Zimmerman Electric Inc., 4913 Peach Street, Erie, PA 16509.

131.   Upon belief and information Defendant, D. Zimmerman Electric, Inc. has availed itself of the laws provided by the Commonwealth of Kentucky and has installed an emergency stop button(s), and/or assisted in the assembling, installing, approving of, and/or certified the safety of or otherwise causing to be located in the Commonwealth of Kentucky, a defective product which contributed to or caused tortious injury in the Commonwealth of Kentucky. Pursuant to KRS 454.170.

132.   Said emergency stop button(s) and other safety equipment installed by Zimmerman electric was/were negligently installed in that it/they were not installed in accordance with the required safety provisions set for in the above counts and allegations.

133.   Specifically, said safety equipment did not have, among other things,  an overload device designed to quickly shut off the electric power or disconnect the conveyor or drive parts in

the event of overload, in accordance with ANSI B20.1-1957, Safety Code for Conveyors, Cableways, and Related Equipment, 29 CFR 1926.555, Section 6, (606).

     a)    Did not have suitable guards to protect working areas, isles or thoroughfares from the hazards or dislodged materials, in accordance with ANSI B20.1-1957, Safety Code for Conveyors, Cableways, and Related Equipment, 29 CFR 1926.555, Section 6, (609).

     b)    Did not have practical, electrical and/or mechanical devices to automatically stop a conveyor when the conveyor, bin, hopper, chute, etc., to which it feeds, has been stopped or has been blocked with loads so that it cannot receive additional loads or material, in accordance with ANSI B20.1-1957, Safety Code for Conveyors, Cableways, and Related Equipment, 29 CFR 1926.555, Section 6 (610).

     c)    Emergency stop switches were not provided at all points along the conveyor, where potential hazards exist, in accordance with ANSI B20.1-1957, Safety Code for Conveyors, Cableways, and Related Equipment, 29 CFR 1926.555, Section 11 (b).

     d)    Should have been guarded by hand rails, guard plates, etc., to minimize the possibility of operator's limbs or clothing being caught between the moving parts of the conveyor and/or the load, and stationary parts of the conveyor structure, in accordance with ANSI B20.1-1957, Safety Code for Conveyors, Cableways, and Related Equipment, 29 CFR 1926.555, Section 17.

     134.    D. Zimmerman Electric, Inc's Agent for Service of Process is Alison L. Grimes, the Kentucky Secretary of State.  The Secretary of State is requested to notify D. Zimmerman Electric, Inc. of this action by sending a copy of this Complaint to the address on the caption of this Complaint. 1910.219(f)(3).

135.    As a direct and proximate result of Defendant's negligence, Plaintiff, Dave E. Trotter has endured pain and suffering, incurred medical expenses and miscellaneous expenses, has loss of income and will lose incur in the future, and will continue to suffer and sustain losses, including but not limited to, future pain and suffering, and medical expenses.

136.    Defendant's negligence *per se* was a substantial factor in causing said injuries and losses as described herein.

## COUNT XX
## BREACH OF EXPRESS AND IMPLIED WARRANTIES

137.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 136 of this Complaint as if fully rewritten herein.

138.    Defendants gave certain express and applied warranties to the relevant public, to Larix, Inc. and to the employees of Larix, Inc that the conveyors were safe for the purposes for which they were intended.   Larix, Inc. and the employees at Larix, Inc. relied on the representations about the safety of the conveyors.  Defendants breached these warranties, both expressed and implied in the following manner:

A.     In failing to provide a safely designed, constructed, manufactured and assembled product.

B.     In failing to use proper techniques in the design and manufacture of its product.

C.     In failing to warn Larix, Inc. and the employees at Larix, Inc. of the defective nature of its product.

D.     In failing to properly test and inspect the conveyors before delivery to the ultimate consumer and user.

139.    The defective conveyor system was a direct and proximate cause of the injuries sustained by Dave E. Trotter and Defendants' breach of express and implied warranties was a

direct and proximate cause of the injuries sustained by Dave E. Trotter on October 18, 2017.

Defendants' breach of express and implied warranties was a substantial factor in causing Dave E.

Trotter's injuries as described herein.

## LOSS OF CONSORTIUM

140.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 139 of this Complaint as if fully rewritten herein.

141.    Plaintiff Dave E. Trotter was/is married to Brendi Jennifer Trotter at the time of his injuries on October 18, 2017.  As a direct and proximate result of the Defendants' defective product, willful and negligent acts and/or omissions, Plaintiff Brendi Jennifer Trotter has suffered the loss of support, services and society, including but not limited to the loss of companionship, consortium, care, assistance, attention, extreme grief, anguish and emotional upset.

142.    Additionally, Plaintiff Brendi Jennifer Trotter, as a result of the Defendants' negligence, has provided assistance to her husband, which has resulted in her missing work and losing wages and will suffer lost wages in the future.

WHEREFORE, Plaintiffs pray for the following relief,

A.    A trial by jury;

B.    For an award for past, present, future: mental and physical pain, suffering, lost wages, future lost wages, medical bills, future medical bills, out of pocket expenses, loss of consortium, loss of enjoyment of life, damages each of which exceed the minimum jurisdictional amount of this Court, in a reasonable and fair amount to be determined by the jury consistent with the evidence;

C.    Court costs and attorney fees;

D.    Pre and post judgment interest; and

E.     For any and all other relief that the Plaintiffs may otherwise be entitled.

Respectfully Submitted,

/s/ Roger N. Braden
Roger N. Braden, Esq. (KBA # 06883)
BRADEN-HUMFLEET LAW, PLC
7000 Houston Road, Suite 5
Florence, Kentucky 41042
(859) 414-0777 (phone)
(859)993-0350 (facsimile)
rnb@bhdlaw.net

Chip Adams, Esq. (KBA# 91160)
29 East Center Street
Madisonville, KY 42431
(270) 825-1450 (phone)
Fax: (270) 821-1371(facsimile)
chipadamslaw@aim.com

*Counsel for Plaintiffs*